# IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE
## IN AND FOR SUSSEX COUNTY

|  |  |  |
|---|---|---|
| SHIRLEY HOOPER | ) | |
| | ) | |
| Appellant | ) | |
| Defendant below, | ) | |
| v. | ) | C.A. No. CPU6-21-000754 |
| | ) | |
| ROBERT L. RISPER | ) | |
| | ) | |
| | ) | |
| Appellee | ) | |
| Plaintiff below. | ) | |
| | ) | |

Submitted: October 14, 2024
Decided: February 14, 2025

Dean S. Campbell, Esquire
703 Chestnut Street
Milton, DE 19968
*Attorney for Appellant*

Robert L. Risper
127 Trafalgar Drive
Dover, DE 19904
*Pro Se*

## DECISION AFTER TRIAL

Shirley Hooper, the defendant below, appealed a judgment entered against her in the Justice of the Peace Court for $5,142.42. Robert Risper, the plaintiff below, asserted he made an oral contract with Appellant to conduct improvements and repairs on a mobile home in return for the ability to live in the home. This honorable Court held a trial on October 14, 2024. Following the Appellee's case-in-chief, counsel for Appellant moved for a Directed Verdict. For the following reasons, this Court finds in favor of Appellant as Appellee failed to prove damages.

**MIMS, J.**

## PROCEDURAL HISTORY

This case is before the Court on appeal from a decision of the Justice of the Peace Court pursuant to 10 *Del. C.* § 9571.[1] Robert Risper ("Appellee") filed a debt claim against Shirley Hooper ("Appellant") for $5,142.42 in the Justice of the Peace Court. On July 2, 2021, the Justice of the Peace Court held the trial and reserved decision. The Justice of the Peace Court issued a decision on July 13, 2021, entering judgment in favor of Appellee for $5,142.42 plus $45 court costs and post-judgment interest at a legal rate of 5.25% annum.[2] The Justice of the Peace Court found that Appellant breached the oral contract with Appellee for renovation of a mobile home unit in exchange for rent.[3] The Justice of the Peace Court held Appellant could not proffer a legal basis for cancelling the contract and there was insufficient testimony to substantiate Appellant's claim Appellee's workmanship was substandard and had to be replaced. The Justice of the Peace Court noted that while Appellee failed to produce receipts, Appellee submitted detailed, handwritten invoices to Appellant listing each piece of material and its purchase price and included a breakdown of labor costs by category which appears fair and accurate.[4]

On July 26, 2021, Appellant filed a timely appeal in this Court. On April 19, 2022, Appellee filed a Complaint on Appeal. Appellee asserts Appellant hired him to clean and repair Appellant's mobile home located at 25056 Berry Bramble Falls, Millsboro, DE 19966 to make it habitable.[5] Appellee alleges he entered into an agreement with Appellant where he would live in the mobile home for the costs and labor of making the Appellant's mobile home habitable.[6] Appellee

---

[1] Del. J.P. Order, C.A. No. JP-17-21-001212 (July 13, 2021).
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] Complaint ¶¶ 1-2.
[6] *Id.* ¶ 3.

completed the work in reliance and in conformity with the agreement.[7] Appellee asserts Appellant refused to rent the home to Appellee based on a false statement.[8] In a letter dated September 29, 2020, Appellant advised Appellee she had "made the decision to cancel the plan to allow you to occupy the trailer at 25056 Berry Bramble Falls, Millsboro."[9] "In our conversation on September 18, 2020, you stated you will burn down the trailer, I have consulted legal advice and was informed this was a felony and to contact the police."[10] Appellant directed Appellee to remove all equipment from the property by October 15, 2020, discard the key, and provide an accurate itemized list with receipts of supply expenditures per their initial verbal agreement.[11]

Appellee provided the requested bill for services.[12] Appellee provided an itemized list of costs for items he purchased on an invoice with a total of $5,142.42 dated November 19, 2020.[13] Appellee sent a letter to Appellant via certified mail stating he sent the invoice for the costs and labor he was due but never received the payment and advised Appellant to pay the full amount in order to avoid further legal action.[14]

On May 6, 2022, Appellant filed an Answer and Counterclaim. Appellant admits she declined to lease the home to Appellee after he breached their agreement, however, denies all other allegations.[15] Appellant admits Appellee provided a bare invoice, which did not conform to the terms of the agreement, lacked any sources of verification and was grossly inflated, however,

---

[7] Complaint ¶ 4.
[8] *Id.* ¶ 5.
[9] Appellee's Exhibit A.
[10] *Id.*
[11] *Id.*
[12] *Id* ¶ 6.
[13] Appellee's Exhibit B.
[14] Appellee's Exhibit C.
[15] Appellant's Answer and Counterclaim ¶¶ 1 -5.

denies all remaining allegations.[16] Appellant admits a demand was made by Appellee, however denies the demand was proper, and denies she owes Appellee $5, 142.42.[17] Appellant asserted five affirmative defenses: (1) fail to assert a claim for which relief can be grated; (2) failure to mitigate damages; (3) set-off as asserted in the Counterclaim; (4) Appellee padded the invoice by inflating material costs and further charging for labor in violation of the agreement, and (5) Appellee was the first to breach the contract and therefore Appellant is excused from performance.[18]

Appellant asserts two claims in her Counterclaim against Appellee. In Count I of the Counterclaim, Set-Off, Appellant asserts Appellee presented himself as a licensed professional engaged in the business of mobile home repair.[19] Appellant states Appellee agreed to perform repairs on the mobile home, including flooring and cabinet installation in a good and workmanlike manner, in exchange for credit against future rent.[20] Appellant states Appellee was to provide her with all receipts for materials and the cumulative amount would subsequently be conducted from a lease agreement to be established.[21] Appellant asserts that according to the agreement, Appellee was not to charge for labor nor mark-up materials costs and Appellee submitted a bare invoice for material and labor without any verification.[22] Appellant asserts Appellee refused to produce material receipts, a subsequent inspection determined Appellee's work to be defective and non-conforming to the contract, and Appellant had Appellee's work repaired by a professional contractor for a cost in excess of $30,000.[23]

---

[16] *Id.* ¶ 6.
[17] *Id.* ¶¶ 7 – 8.
[18] Appellant's Answer and Counterclaim.
[19] Counterclaim ¶ 9.
[20] *Id.* ¶ 11.
[21] *Id.*
[22] *Id.* ¶¶ 12 – 13.
[23] *Id.* ¶¶¶ 14 – 16.

Appellant requested this Court enter an Order of Judgment against Appellee in an amount proven and determined, together with pre-judgment and post-judgment interest, costs, attorneys' fees and such other relief as the Court may deem appropriate. Appellant attached a certificate of service dated May 6, 2022, stating the Answer and Counterclaim was served on Appellee via file and serve through U.S. Mail to 127 Trafalgar Drive, Dover, DE 19904. On October 25, 2022, Appellant files a Direction for Entry of Judgment by Default. Appellant asserts pursuant to Court of Common Pleas Civil Rule 55(b)(1), Appellant directs the Clerk of the Court to enter judgment against Appellee in the amount of $30,000, plus post-judgment interest at the legal rate on the ground Appellee failed to appear, plead, or otherwise defend as provided by the rules of the Court.[24] Appellant attached a Statement of Debt Due as the principal amount of $30,000 as well as an Affidavit in Support of Default Judgment.[25] The Court entered the default judgment in favor of Appellant on its Counterclaim in the amount of $30,000 on May 25, 2022.

On November 1, 2022, the Court held the pre-trial hearing for the Appeal of Appellee's claim. Appellee claimed he was not aware of Appellant's Counterclaim.[26] The Court advised Appellee a default judgment had been entered on the Counterclaim and he would need to file a Motion to Vacate.[27] On May 11, 2023, Appellee files a Motion for Relief from Default Judgment. Appellee asserts he did not receive the Answer and Counterclaim until he came to Court for the pre-trial conference.[28] Appellee states after he left court on November 1, 2022, he attempted to contact an attorney and planned to file an Answer to the Counterclaim but suffered two severe

---

[24] Appellant's Motion for Default Judgment.
[25] *Id.*
[26] Tr. 4:9-10 (July 11. 2023).
[27] Tr. 5:3-9.
[28] Appellee's Motion for Relief from Default Judgment ¶ 1.

seizures that had long lasting mental affects with some memory loss.[29] Appellant requests this Court consider excusable neglect since he did not receive the Counterclaim and intended to take action immediately after receiving notice but got sick.[30] Appellee states he is attaching medical records to support his claim, though there are none in the Court's file. Appellee asserts he did not receive the Direction for Entry of Default Judgment, even though he previously appeared and filed the Complaint on appeal.[31] Appellee argues the original complaint is still pending and both the Complaint and Counterclaim would be able to be heard at the same time with little prejudice to Appellant.[32]

On May 15, 2023, Appellant filed a Response to Appellee's Motion to Vacate Default Judgment. Appellant asserts that while Appellee is a *pro se* litigant, that does not relieve him from following the Court's rules and the orderly and efficient administration of justice to save their claims.[33] Appellant argues that Appellee's explanations involving his medical situation might explain the most recent delay since October 2022, but they do not explain the failure to answer the Counterclaim initially.[34] Appellant argues Appellee spends considerable time explaining the delay in filing the Motion to Vacate between October 2022 and the present but offers no explanation to support a finding of excusable neglect.[35] Appellant states "[E]xcusable neglect has been defined as that neglect which might have been the act of a reasonable prudent person under the circumstances.[36] A defendant cannot have a judgment vacated where it has simply ignored the

---

[29] Appellee's Motion for Relief from Default Judgment ¶ 2.
[30] *Id.* ¶ 6.
[31] *Id.*
[32] *Id.* ¶ 8.
[33] Appellant's Response to Motion to Vacate Judgment ¶ 1.
[34] *Id.*
[35] *Id.* ¶ 2.
[36] *Id.*

process."[37] Appellant argues Appellee claims he did not receive the Counterclaim in the mail without explaining how he received the Notice of Appeal, filed a Complaint on Appeal in response yet waited six months to learn if an Answer had been filed by the party who filed the appeal.[38] Appellant argues a reasonable person would check with the Court and the docket to see if an Answer had been filed before the passage of six months.[39] Appellant asserts Appellee has failed to meet his burden of proving excusable neglect and requested the Court deny Appellee's Motion to Vacate Judgment.[40]

On July 12, 2023, the Court held a hearing for Appellee's Motion to Vacate Judgment. Commissioner Bucklin reserved decision. On September 12, 2023, Commissioner Bucklin issued his Proposed Findings of Fact and Recommendation on Appellee's Motion to Vacate Judgment. Commissioner Bucklin recommended the Court grant Appellee's Motion to Vacate Judgment.[41] The Commissioner found the Appellant's claim for $30,000 in its Motion for Default Judgment should have had an inquisition hearing as there was no accounting as to the exact damages.[42] The amount of damages should be subject to a hearing where Appellant can present evidence as to damages, which requires putting on similar evidence necessary to prove the Counterclaim.[43] There is very little prejudice in vacating the default judgment and allowing the case to be heard at trial on the merits.[44]

---

[37] Appellant's Response to Motion to Vacate Judgment
[38] *Id.* ¶¶ 4-5.
[39] *Id.* ¶ 6.
[40] *Id.* ¶ 7.
[41] Commissioner's Proposed Findings of Fact and Recommendation.
[42] *Id.*
[43] *Id.*
[44] *Id.*

7

On September 22, 2023, Appellant filed an Appeal of the Commissioner's Proposed Findings of Fact and Recommendation. Appellant notes she filed the original Answer and Counterclaim on June 6, 2022, and to the date of this Appeal no Answer to the Counterclaim has been filed.[45] Appellant asserts after learning in Court in November 2022 of the default judgment, Appellee took six months to file a Motion to Vacate the Default Judgment and failed to meet his burden of excusable neglect for failing to file an Answer to the Counterclaim to this day.[46] Appellant argues Appellee remains in default more than sixteen months after the Counterclaim was filed, and Appellee failed to identify excusable neglect for not Answering the Counterclaim or assert a defense.[47] In addition, Appellant argues the Commissioner committed error by comparing a trial to an inquisition hearing.[48] Appellant argues it gave an amount of $30,000 and a default judgment establishes liability by default, and an inquisition hearing would have different testimony than a full trial.[49] Appellant asserts she gave a specific amount, the default judgment was an appropriate vehicle after Appellee failed to Answer the Counterclaim to this day, give a meritorious defense to this day, and provide excusable neglect.[50] In the alternative, Appellant asserts if an inquisition hearing is needed that is only for damages and not liability.[51] Appellant requested the default judgment in the amount of $30,000 attributed to Appellee stand. On October 17, 2023, the Court received the transcript of the motion proceedings. On February 26, 2024, the

---

[45] Appellant's Appeal of Commissioner's Proposed Findings of Fact and Recommendation ¶¶ 2 and 4.

[46] *Id.* ¶ 7.

[47] *Id.* ¶¶ 10-12.

[48] *Id.* ¶ 13.

[49] *Id.* ¶ 14.

[50] Appellant's Appeal of Commissioner's Proposed Findings of Fact and Recommendation ¶¶ 15-17.

[51] *Id.* ¶ 18.

Court held Appellant failed to file her Counterclaim in the Justice of the Peace Court and therefore this Court had no jurisdiction. The Court granted Appellee's Motion to Vacate the Default Judgment. On October 14, 2024, this Court held a trial on the original appeal and after Appellee rested his case, Appellant made a Motion for Directed Verdict for Appellee's failure to prove damages.[52] Accordingly, this honorable Court granted the Appellant's Motion for a Directed Verdict and reserved decision as to the reason.

## FACTS

After review of the record and witness testimony, the Court finds the following are the relevant facts:

There is no dispute that on or about June 2020, Appellant entered into an oral agreement for Appellee to clean and repair her mobile home at 25056 Berry Bramble Falls, Millsboro DE 19966. Based upon evidence presented at trial, it is unclear the exact terms of this oral agreement. Appellee began work on the mobile home including bartering with other contractors to assist him with the mobile home in exchange for Appellee's work on their contractor projects. While Appellee alleges a term of the oral contract included him living in the mobile home in exchange for the repairs and labor setting off any rent, there is no documented evidence of this term, however, it appears there was some agreement with Appellant he could rent the mobile home.[53]

Appellee received assistance in repairing and reconnecting the electrical system and put the electric service in his name with Delmarva Power.[54] In undated letters with no contact name, Appellee stated he had an electric inspection conducted in early August and the cost for the walk-

---

[52] Appellant's counsel made a Motion to Dismiss on the record.
[53] Appellee's Exhibit No. 5.
[54] Appellee's Exhibit No. 2.

9

through was $150 and in late August he ran the electric to the pump house and the cost was $75.[55] Appellant failed to attach any receipts to either letter.

Appellee installed flooring, kitchen cabinets, cleaned carpets, hauled trash with his own vehicle using his own gas, installed the water pump and other general contract work. Appellee took undated photographs of the work he completed.[56] Appellant sought receipts for Appellee's work after Appellee began quoting prices to her. Appellee admits he never kept receipts. Appellant requested Appellee abandon the project and move out of the trailer. Appellee provided an itemized invoice dated November 19, 2020, along with a letter stating he was owed somewhere between $1800 and $2500.[57] Appellee admits much of the items on the invoice contain estimates. Appellee sued Appellant for the $5,142.42 for breach of contract, his inconvenience and being directed to exit the mobile home.

## DISCUSSION

Appellee asserts he is entitled to damages for costs and labor for renovations to Appellant's mobile home after Appellant breached their oral contract. Under Delaware law, a plaintiff in a civil matter has the burden of proving his claims by preponderance of the evidence.[58] The preponderance of the evidence standard "means proof that something is more likely than not."[59] Thus, the law demands that Plaintiff meet this standard to prove his claim. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence if the motion is not granted, without having reserved the right so to do, and to the same extent as if the

---

[55] Appellee's Exhibit No. 1.
[56] Appellee's Exhibit No. 3.
[57] Appellee's Exhibits No. 4-5.
[58] *JER Judson GP XXI LLC v. DLE Investors, LP*, 275 A.3d 755, 782 (Del. Ch. 2022).
[59] *Id.*

motion had not been made.[60] A motion for a directed verdict shall state the specific grounds therefor.[61]

Appellee must prove by preponderance of the evidence that (1) the parties formed a contract, (2) Appellant breached the contract, and (3) Appellee suffered monetary damages because of Appellant's breach.[62] As to the first element, a contract is a legally enforceable agreement typically formed by mutual assent and consideration provided there are no viable defenses.[63] The law measures the second element by substantial performance.[64] If a party does not substantially perform, and therefore breaches a contract, then she does not perform the essential purpose of the contract.[65] Lastly, for Appellee to meet the third element, he must show that he did not receive his benefit of the contract had the contract been performed.[66]

Based upon the record, the Court holds there was an oral contract between Appellee and Appellant concerning the mobile home renovations, repairs, and rental. The Court holds that while the exact terms and nature of the oral contract are unclear, it is clear Appellant breached the oral contract when she directed Appellee terminated the agreement and told Appellee to abandon the project and exit the premises. Indeed, the agreement between Appellee and Appellant maintained Appellee would live in the mobile home following the completion of any necessary repairs.

The Court holds Appellee cannot prove by preponderance of the evidence that he suffered damages. During his case-in-chief, Appellee offered the September 20, 2020, invoice and the

---

[60] Ct. Com Pl. Civ. R. 50(a).
[61] *Id.*
[62] *Freeman v. Scott*, 2017 WL 2633487, at *4 (Del. Com. Pl. Jun 19, 2017).
[63] *Osborn ex. Rel. Osborn v. Kemp*, 991 A.2d 1153, 1158-59 (Del. 2010).
[64] *Clean Harbors, Inc. v. Union Pacific Corp.*, 2017 WL 5606953, at *4 (Del. Super. Nov. 15, 2017).
[65] *Id.*
[66] *Comrie v. Enterasys Network, Inc.*, 837 A.2d 1, 17 (Del. Ch. 2003).

11

November 19, 2020, invoice as proof of his material and labor expenditures. Appellee failed to attach receipts to either invoice. Likewise, the invoices do not meet the preponderance standard because the Appellee could have merely listed expenses without veracity to them. In fact, Appellee admitted his labor costs were mere estimates and some of the projects were favors provided by other contractors. Moreover, Appellee did not provide proof of how he measured the labor expenses he listed on both invoices. During trial, he could not point to a cost measurement used within his trade nor could he point to a measurement he used consistently with other clients. Therefore, this Court cannot find it more likely than not that the Appellee incurred expenses because he produced no receipts nor labor expense measurements to verify the expenditures he listed in both invoices.

## CONCLUSION

For the reasons discussed above, this Court holds Appellee failed to meet his burden by a preponderance of the evidence that Appellant owed him $5, 142.42 for breaching their oral contract therefore grants Appellant's Motion for the Directed Verdict.

**IT IS SO ORDERED** this _14th_ day of _February_ 2025.

The Honorable Rae M. Mims
Judge

Cc:    Shelly Swafford, Senior Judicial Case Manager

13